David G. Barker (#024657)
Emily R. Parker (#036286)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: dbarker@swlaw.com
       eparker@swlaw.com

Anna Naydonov (admitted *pro hac vice*)
White & CASE L.L.P.
701 Thirteenth Street Northwest
Washington, D.C. 20005-3807
Telephone: 202-626-3600
Facsimile: 202-639-9355
E-Mail: anna.naydonov@whitecase.com

David Okano (admitted *pro hac vice*)
WHITE & CASE L.L.P.
2 Palo Alto Square
Suite 900
3000 El Camino Real
Palo Alto, California 94306-2109
Telephone: 650-213-0300
Facsimile: 650-213-8158
E-Mail: david.okano@whitecase.com

Nathan Swire (admitted *pro hac vice*)
WHITE & CASE L.L.P.
1221 Avenue of the Americas
New York, NY 10020
Telephone: 212-819-8200
Facsimile: 212.354.8113
E-Mail: nathan.swire@whitecase.com

*Attorneys for Plaintiff Whaleco Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Whaleco Inc., a Delaware company,<br><br>Plaintiff,<br><br>v.<br><br>Temuapp.me, a domain name; Temuapp.space, a domain name; and Does 1-20, unknown individuals,<br><br>Defendants. | No. CV-23-02615-PHX-MTL<br><br>**PLAINTIFF WHALECO INC.'S MOTION FOR DEFAULT JUDGMENT** |

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff Whaleco Inc. ("Whaleco") moves for entry of default judgment against the Defendant registrant of the infringing domain names <temuapp.me> and <temuapp.space> ("Defendant").

## I. INTRODUCTION

Whaleco files this Motion for Default Judgment on its claims: (a) for cybersquatting under the Lanham Act, 15 U.S.C. § 1125(d); (b) for trademark infringement under the Lanham Act, 15 U.S.C. § 1114; (c) for unfair competition and false designation of origin

under the Lanham Act, 15 U.S.C. § 1125(a); and (d) for trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c), because the Defendant has not timely answered or responded to Whaleco's Complaint.

Whaleco operates an online shopping platform ("TEMU.COM" or the "Platform"), accessible through a website (https://temu.com) and mobile application. [ECF 1 ¶ 16.] Since TEMU.COM went live, Whaleco has used "TEMU" and its unique logo in connection with the Platform, and both are the subject of federal trademark registrations. [*Id.* ¶¶ 19-20.] Seeking to unfairly benefit from Whaleco's success in building a distinctive brand, the Defendant registrant registered the infringing domain names <temuapp.me> and <temuapp.space> (collectively, the "Infringing Domain Names"), to divert traffic from TEMU.COM. [*Id.* ¶¶ 33-40.] The Infringing Domain Names are confusingly similar to Whaleco's registered trademarks, and the Infringing Domain Names were registered with a bad faith intent to divert consumers away from TEMU.COM. [*Id.* ¶¶ 41-42.]

The Defendant has conceded the truth of the allegations in Whaleco's Complaint by the Defendant's default, and the Court should enter default judgment.

## II. FACTUAL BACKGROUND

### A. The TEMU Marks

TEMU.COM is an online marketplace that connects consumers with sellers, manufacturers, and brands around the world. [*Id.* ¶ 18.] TEMU.COM launched in the United States on September 1, 2022, and quickly became the most downloaded ecommerce app in the fourth quarter of 2022. [*Id.* ¶ 17.] TEMU's rapid rise is credited to its "innovative ecommerce combination of online shopping and entertainment known as 'discovery-based shopping.'" [*Id.*] The Platform strives to continually offer the most affordable quality products to create an inclusive environment for consumers and sellers. [*Id.* ¶ 18.] The Platform protects customers by providing trust and safety services, including protecting consumers' personal and payment information. [*Id.*]

Since the Platform went live in September 2022, Whaleco has continuously used the "TEMU" trademark and logo to identify the Platform. [*Id.* ¶ 19.] Whaleco, through its

1  affiliate Five Bells Limited, is the exclusive licensee of the following valid and subsisting
2  common law and registered marks (the "TEMU Marks"):

3      a. U.S. Trademark Reg. No. 7,164,306, issued on the Principal Register in the
4      U.S. Patent and Trademark Office ("USPTO") on September 12, 2023, for the
5      word mark TEMU ("TEMU Word Mark") for the provision of an online
6      marketplace for buyers and sellers of goods and services.

7      b. U.S. Trademark Reg. No. 7,145,476, issued on the Principal Register in the
8      USPTO on August 22, 2023, for the logo mark ("TEMU Logo Mark") for the
9      provision of an online marketplace for buyers and sellers of goods and services.

10 [*Id.* ¶ 20.]

11     Whaleco has continuously used the TEMU Marks in commerce throughout the
12 United States since September 1, 2022. [*Id.* ¶ 22.] As a result of its widespread, continuous,
13 and exclusive use of the TEMU Marks to identify its ecommerce platform and Whaleco as
14 its source, Whaleco owns valid and subsisting federal statutory and common law rights to
15 the TEMU Marks. [*Id.* ¶ 24.] Whaleco owned these rights prior to the Defendant's use of
16 the Infringing Domain Names. [*Id.*]

17     Whaleco spends a substantial amount of money on marketing and developing the
18 brand upon which the TEMU Marks are based. [*Id.* ¶ 28.] For example, Whaleco invested
19 substantial sums of money to place its famous "Shop like a billionaire" commercial, which
20 ran during the Super Bowl. [*Id.*] Whaleco also spends a substantial amount of money in
21 building and optimizing an online infrastructure for sellers. [*Id.* ¶ 27.] The success of the
22 Platform is driven by traffic to the Platform. [*Id.* ¶ 28.] The number of consumers using the
23 Platform is a key factor in attracting more quality sellers, which in turn attracts more
24 consumers. [*Id.* ¶ 28.] The Platform has become very popular, with over 100 million active
25 users in the United States as of May 2023. [*Id.* ¶ 30.]

26     **B. The Infringing Domain Names**

27     On October 11, 2023, the Defendant registered the domain names <temuapp.me>
28 and <temuapp.space>. [*Id.* ¶¶ 33.] At the time the Complaint was filed, the two domain

names resolved to nearly identical websites. [*Id.* ¶¶ 34.] The websites contained "TEMU" in both the domain name and in multiple places on the website. [*Id.* ¶ 37.] They used words that are identical and/or confusingly similar to the TEMU Word Mark, and orange colors resembling that on the TEMU website and on TEMU packaging. [*Id.*] These sites sought to replicate aspects of TEMU.COM's "look and feel." [*Id.*] Because of these similarities, consumers are likely to be confused into believing that Whaleco authorized, approved, or is affiliated or connected with Defendant's websites when that is not the case. [*Id.* ¶ 42.]

The domain registrar for the Infringing Domain Names is Spaceship, Inc. ("Spaceship"), which is headquartered in this District. [*Id.* ¶ 33.] Withheld for Privacy ehf is the "proxy" or privacy company used by the registrant of the Infringing Domain Names to hide their name in the public WHOIS database. [*Id.*]

### C. The Current Action

On December 14, 2023, Whaleco filed the Complaint, alleging: (a) an *in rem* action for cybersquatting in violation of the Lanham Act, 15 U.S.C. § 1125(d); (b) an action for trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (c) an action for unfair competition and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); and (d) an action for trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c). [ECF 1.]

On December 27, 2023, the Court entered an order authorizing alternative personal service of the Complaint, Summons, and all papers in the case, on the Defendant registrant of the Infringing Domain Names. [ECF 12.] Alternative service of process was executed on the Defendant on December 28, 2023. [ECF 14.] On January 4, 2024, Spaceship provided the name of and contact information for the Defendant,[1] and alternative service was again executed on the Defendant on January 4, 2024. [ECF 17.]

Under Federal Rule of Civil Procedure 12(a)(1), the Defendant was required to serve

---

[1] Spaceship provided the name and contact information that the registrant provided to Spaceship when registering the Infringing Domain Names: Arslan Shafiq, with a mailing address in Punjab, Pakistan.

1  a response on or before January 19, 2024.  Defendant did not serve a response or otherwise
2  defend this action within the allotted time.  Therefore, on February 2, 2024, the Clerk
3  entered default against the Defendant. [ECF 25.]

### III.   ARGUMENT

#### A. Jurisdiction and Venue are Proper in this Action.

This Court has the power to grant Whaleco's motion and enter default judgment against the Defendant.

The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

This Court has *in rem* jurisdiction over the Infringing Domain Names pursuant to 15 U.S.C. § 1125(d)(2)(A), which dictates that the Infringing Domain Names are deemed to have their situs in the judicial district where the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located. Both of the Infringing Domain Names have been registered with a domain registrar in this district, Spaceship.

The exercise of personal jurisdiction over the Defendant is also proper because the Defendant is a foreign person who has availed himself of this jurisdiction by committing acts of trademark infringement when he registered the Infringing Domain Names with Spaceship, located in this judicial district. Further, by registering the Infringing Domain Names with Spaceship, the Defendant agreed to jurisdiction in this Court, agreeing to "submit without objection . . . to the subject matter and personal jurisdiction of the courts . . . where [Spaceship is] located, currently those State or federal courts whose geographic districts include Maricopa County, State of Arizona."  [ECF 1, Exhibit 1, at § 29.] Moreover, Defendant specifically agreed to submit to personal jurisdiction in the state and federal court in Maricopa County, Arizona "for the adjudication of third party [sic] disputes" (i.e., disputes such as this one – between the registrant and the third-party brand owner Whaleco over the domain name registered in this District). [*Id.*]

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Whaleco's claims occurred in this district due to the location of Spaceship, the registrar of the Infringing Domain Names. Venue is also proper under 15 U.S.C. § 1125(d)(2), because Spaceship—and the property forming the basis of *in rem* jurisdiction for the Infringing Domain Names—is located in this judicial district.

### B. The Clerk Properly Entered Default.

Under Federal Rule of Civil Procedure 55(a), the Clerk of Court must enter default when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Here, the Clerk properly entered default against the Defendant because the Defendant failed to respond to Whaleco's Complaint despite being properly served, as established by the declaration of Whaleco's counsel. [ECF 25.]

### C. Whaleco has Pleaded Sufficient Facts to Support Judgment.

When a defendant defaults, the well-pleaded factual allegations in the plaintiff's complaint are deemed admitted. *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). Before entering default judgment, however, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *DirectTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). This is because the "defendant is not held to admit facts that are not well-pleaded or admit conclusions of law." *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). As discussed below, Whaleco has pleaded sufficient facts to support judgment against the Defendant on all of Whaleco's claims.

#### 1. Anti-cybersquatting Consumer Protection Act

The Anti-cybersquatting Consumer Protection Act ("ACPA") provides remedies for trademark holders seeking relief against parties infringing upon their marks with website domain names. *See* 15 U.S.C. § 1116(a). Cybersquatting "occurs when a person other than

the trademark holder registers the domain name of a well known [sic] trademark and then attempts to profit from this by either ransoming the domain name back to the trademark holder or by using the domain name to divert business from the trademark holder to the domain name holder." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005).

Under the ACPA, a plaintiff must prove: "(1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with bad faith intent to profit from that mark." *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1219–20 (9th Cir. 2010); 15 U.S.C. § 1125(d)(1)(A).

### a. Use of confusingly similar domain names.

In general, "a domain name that incorporates a trademark is confusingly similar to that mark if consumers might think that [the domain name] is used, approved, or permitted by the mark holder." *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 205–06 (6th Cir. 2004) (citations omitted). "[S]light differences between domain names and registered marks, such as the addition of minor or generic words to the disputed domain names are irrelevant." *Id.* (citations omitted); *see also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25A:51 (5th ed. 2023) (same).

The Infringing Domain Names violate the ACPA by directly incorporating the TEMU Word Mark. [ECF 1 ¶ 37.] Consumers are likely to think that Whaleco authorized, approved, or is affiliated or connected with the Infringing Domain Names when that is not the case. [*Id.* ¶ 42.] Thus, these Infringing Domain Names are confusingly similar to the TEMU Marks.

### b. Bad faith intent.

To assist courts in determining whether the defendant acted in bad faith, the ACPA includes a non-exclusive list of nine factors to be considered. 15 U.S.C. § 1125(d)(1)(B)(i). Relevant to this case are the following factors:

- the trademark or other intellectual property rights of the person, if any, in the domain name;

- the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

- the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

- the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

*Id.*

Here, the Infringing Domain Names include Whaleco's TEMU Word Mark, and consumers will likely assume that Whaleco is affiliated with these domain names [ECF 1 ¶¶ 37, 42.]; the Defendant registrant has taken steps to conceal his identity through using Withheld for Privacy ehf [*Id.* ¶ 33.]; the Infringing Domain Names are used to divert consumers away from TEMU.COM to sites not endorsed by Whaleco [*Id.* ¶ 41.]; and, as a fanciful mark, the TEMU Word Mark is inherently distinctive and famous. The totality of circumstances demonstrates that the Defendant has acted with bad faith intent to profit off the TEMU Marks.

### 2. **Trademark Infringement**

To establish a claim for trademark infringement, a plaintiff must prove: (1) the presence of a valid and protectable trademark; and (2) that the defendant's use of the mark is likely to cause consumer confusion and thus infringe upon the plaintiff's interest in its trademark. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985). "[R]egistration of the mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark . . . ." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).

Whether a mark is confusingly similar is determined by evaluating: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). The relative importance of each factor is case-specific. *Brookfield*, 174 F.3d at 1054.

### *a. The TEMU Marks are valid and protectable.*

Here, the TEMU Marks are registered with the USPTO. [ECF 1 ¶ 20.] Such registration is prima facie evidence of their validity and of Whaleco's exclusive right to their use. Further, Whaleco has developed strong common law rights and substantial goodwill in the TEMU Marks. [*Id.* ¶¶ 22-32.]

### *b. The Infringing Domain Names are confusingly similar.*

#### *i. Strength of mark*

A court weighs the mark's conceptual strength and commercial strength. *Network Auto., Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011). Arbitrary or fanciful marks, such as made-up words, are inherently distinctive and are afforded the greatest protection under trademark law. *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992). "Commercial strength is based on actual marketplace recognition." *Network*, 638 F.3d at 1149 (citation omitted). Here, the TEMU Marks are strong conceptually and commercially. TEMU—a made-up word—is fanciful and inherently distinctive. And the TEMU Marks are highly recognizable. Use of the Platform in the U.S. has skyrocketed since its launch, with over 100 million active users in the United States as of May 2023. [ECF 1 ¶ 30.] This factor weighs in favor of infringement.

#### *ii. Proximity of goods*

Courts "consider whether the buying public could reasonably conclude that the products came from the same source." *Surfvivor Media, Inc. v. Survivors Prods.*, 406 F.3d 625, 633 (9th Cir. 2005). Here, consumers could reasonably conclude that Defendant's websites are authorized or endorsed by Whaleco. At the time Whaleco's Complaint was

filed, the websites associated with the Infringing Domain Names prominently displayed both the TEMU Word Mark and the TEMU Logo Mark. [ECF 1 ¶¶ 35, 37.] This factor weighs in favor of infringement.

### iii.   Similarity of marks

When comparing two marks, courts are guided by three principles: (1) "the marks must be considered in their entirety and as they appear in the marketplace"; (2) "similarity is adjudged in terms of appearance, sound, and meaning"; and (3) "similarities are weighed more heavily than differences." *GoTo.com v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000) (citations omitted).

In this case, the Infringing Domain Names directly incorporate the TEMU Word Mark in the domain name and thus are confusingly similar to the TEMU Word Mark. [ECF 1 ¶ 37.] At the time the Complaint was filed, the websites associated with the Infringing Domain Names displayed the TEMU Word Mark, and the TEMU Logo Mark. [*Id.*] Moreover, Defendant's websites appear to be targeted at users interested in the TEMU apps. [*Id.* ¶ 39.] In short, the parties overlap in the marketplace. This factor weighs in favor of infringement.

### iv.   Evidence of actual confusion

Evidence of actual confusion is not required for a finding of likelihood of confusion. *See Brookfield*, 174 F.3d at 1050. That said, confusion is not only likely but inevitable because the Infringing Domain Names use the TEMU Marks with an intent to deceive consumers. [ECF 1 ¶¶ 35, 37, 42.]

### v.   Marketing channels used

Courts consider the location where the goods are sold, the price range of goods, types of advertising, and "whether the parties' customer bases overlap." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1130 (9th Cir. 2014); *Sleekcraft*, 599 F.2d at 353. While the Infringing Domain Names do not appear to sell goods, they are clearly targeted at TEMU's customer base interested in the TEMU app. This factor weighs in favor of infringement.

*vi.    Type of goods and degree of care*

In general, this factor depends on price of the goods. If the goods are relatively inexpensive, courts assume that consumers exercise less care. *Brookfield*, 174 F.3d at 1060. Here, the prices depend on the product. However, many products on TEMU.COM are relatively inexpensive, and the TEMU app itself is free. Consumers may therefore exercise less care in verifying the source of the TEMU app while searching for it online. This factor weighs in favor of infringement.

*vii.    Defendants' intent*

If a party "knowingly adopts a mark similar to another's . . . courts presume that the [party] will accomplish its purpose, and that the public will be deceived." *Acad. of Mot. Picture Arts & Scis. v. Creative House Promo., Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991). Here, Defendant adopted the TEMU Marks with bad faith intent to financially benefit by misleading consumers into visiting Defendant's platforms because the consumers believed the platforms were associated with TEMU.COM. [ECF 1 ¶¶ 41-42.] Defendant's bad faith intent is further demonstrated by the fact that the Infringing Domain Names were registered *after* Whaleco's "Shop like a billionaire" commercial aired during the 2023 Super Bowl. [*Id*. ¶¶ 28, 33.] This factor weighs in favor of infringement.

*viii.    Likelihood of expansion*

This factor is neutral as the parties operate in the ecommerce market.

Overall, the balance of the *Sleekcraft* factors strongly suggest that Defendant's uses of the TEMU Marks create consumer confusion, and supports a finding of trademark infringement.

**3. Trademark Dilution**

Dilution occurs when another party's use of a mark "weaken[s] the commercial magnetism of [the] marks and diminish[es] their ability to evoke their original associations." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (citation omitted). A plaintiff must prove: "(1) the mark is famous; (2) the defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and

(4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1164 n. 4 (9th Cir. 2011). "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).

Here, the TEMU Marks are famous for purposes of a dilution claim. Since the Platform went live in the U.S., Whaleco has used the TEMU Marks in connection with the sale and marketing of its products. [ECF 1 ¶ 22.] The "Shop like a billionaire" commercial aired during the 2023 Super Bowl—a television event that attracts millions of viewers. [*Id.* ¶ 28.] As of May 2023, the Platform had over 100 million active users in the United States. [*Id.* ¶ 30.] And Whaleco has had substantial sales of goods from its ecommerce platform under the TEMU Marks throughout the U.S. [*Id.*]

Such facts prove that the TEMU Marks are "widely recognized by the general consuming public of the United States as a designation of source of the goods or services" of Whaleco. By using the TEMU Marks on his commercial websites—after the marks became famous—Defendant sought to unfairly capitalize on the TEMU Marks' goodwill. Defendant's uses of the TEMU Marks tarnish the goodwill of and reputation of Whaleco, supporting a finding of trademark dilution.

### 4. Federal Unfair Competition

Courts have "uniformly held" that common law and statutory trademark infringement are "specific aspects of unfair competition." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1031 (C.D. Cal. 2011) (citing *New W. Corp. v. NYM Co. of Calif., Inc.*, 595 F.2d 1193 1201 (9th Cir. 1979)). Further, the tests for infringement of a federally registered mark, a common law trademark, Lanham Act unfair competition, and common law unfair competition involving trademarks are the same. *Kythera Biopharms., Inc. v, Lithera, Inc.*, 998 F. Supp. 2d 890, 897 (C.D. Cal. 2014) (citations omitted).

As discussed in detail above, Defendant has infringed Whaleco's TEMU Marks, supporting a finding of unfair competition.

Further, this is an exceptional case under 15 U.S.C. § 1117(a), and Whaleco is therefore entitled to, and requests, its reasonable attorneys' fees and costs.

### D. The Court Should Transfer the Infringing Domain Names to Whaleco.

Because Whaleco has shown that the Infringing Domain Names violate 15 U.S.C. § 1125(d) and that Whaleco is entitled to default judgment, the Court may order the transfer of the Infringing Domain Names to Whaleco. 15 U.S.C. § 1125(d)(2)(D)(i). The domain registry operator for the Infringing Domain Names is Spaceship, which is located in this judicial district and is subject to the Court's jurisdiction.

Therefore, Whaleco respectfully requests that the Court enter default judgment against Defendant, and order Spaceship to transfer ownership of the Infringing Domain Names to Whaleco. Whaleco further requests that the Court order Spaceship to transfer to Whaleco any other domain names that include or resemble the TEMU Marks registered or owned by the registrant of the Infringing Domain Names.

### IV. CONCLUSION

For these reasons, Whaleco respectfully requests that the Court grant Whaleco's Motion for Default Judgment, enter Whaleco's proposed order, and grant such further relief as this Court deems proper.

DATED this 12th day of March, 2024.

SNELL & WILMER L.L.P.

By: *s/ Emily R. Parker*
David G. Barker
Emily R. Parker
One East Washington Street
Suite 2700
Phoenix, Arizona  85004-2556

WHITE & CASE L.L.P.

David Okano (admitted *pro hac vice*)
2 Palo Alto Square
Suite 900
3000 El Camino Real
Palo Alto, California 94306-2109

Anna Naydonov (admitted *pro hac vice*)
701 Thirteenth Street Northwest
Washington, D.C. 20005-3807

Nathan Swire (admitted *pro hac vice*)
1121 Avenue of the Americas
New York, New York 10020

*Attorneys for Plaintiff Whaleco Inc.*